UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20884-cr-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LESLIE ROBERTS, JR.,

    Defendant.
_____/

## OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

Defendant, LESLIE ROBERTS, JR., hereby files his objections to his Pre-Sentence Investigation Report (hereinafter "PSI") and in support states:

### I.  The Plea Agreement

On February 5, 2015, Roberts, Jr. entered into a written Plea Agreement with the United States of America.  In this agreement, Roberts, Jr. agreed to plead guilty to a one count Information charging mail fraud in violation of Title 18 U.S.C. § 1341.  Specifically, Paragraph 13 of the Information charges:

> In or around late July 2011, the defendant, LESLIE ROBERTS, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly cause to be delivered certain matter and things, that is, thirteen forged and fraudulent P.M. artworks, from LESLIE ROBERTS, in Miami, Florida, to E.S., in Round Hill, Virginia, delivered by UPS, a private interstate commercial carrier, according to the directions thereon, in violation of Title 18, United States Code, Sections 1341 and 2.

DE #1, p. 3.  Pursuant to the written plea agreement, Roberts, Jr. and the United States

agreed the loss amount attributable to Roberts, Jr. is between $400,000 and $1 million.[1] DE #16, ¶ 7(b).  As a result, it was expressly agreed to and understood by the parties that they would recommend to this Court a 14 level adjustment pursuant to § 2B1.1(b)(1)(H).

In addition to a recommendation regarding the amount of loss attributable to Roberts, Jr., the written agreement calls for a joint recommendation that Roberts, Jr. receive a three-level reduction in his offense level for acceptance of responsibility.  And, other than a "potential" enhancement for the number of victims, the parties agreed that no other enhancements, including a role adjustment, apply.  DE #16, ¶ 7( c) The government will recommend a sentence at the low end of the guideline range.

## II.  The Factual Proffer

At the time Roberts, Jr. entered into the above-referenced Plea Agreement he and the government also signed a "Factual Proffer."  That Proffer contains the details of the offense Roberts, Jr. admitted to committing and reads in full as follows:

> Had this case proceeded to trial, the United States would have proved beyond a reasonable doubt that between approximately April 2010 and September 2012, Leslie ROBERTS (hereinafter "the defendant") was a Miami art dealer working primarily out of his Coconut Grove, Florida gallery, Max in the Grove. The name "Max in the Grove" was a reference to the artist P.M., who is a living artist engaged in the production of artworks from a studio located in New York, New York ("the New York studio").  Each P.M. work possessed both a title and a unique control or serial number assigned to it by the New York studio. While more than one work may have the same title (because it was of the same or substantially the same image), every work was assigned its own serial number, which appeared on the back of the canvass, along with a copyright mark.  The New York studio maintained

---

[1] The value of art can only be described as subjective.  It fluctuates with timing of the market, trends and demand as well as other factors including the collector's emotional attachment to the piece.  As such, the parties calculated that the reasonable amount of the loss in this case was between $400,000 and $1 million.

     records of all images created and their unique serial numbers. Each P.M. work also possessed a certificate of authenticity, with a raised seal, provided by the New York studio that accompanied each painting upon its sale.

     While he owned Max in the Grove, the defendant agreed with his son, Leslie Roberts III and his daughter, Britney Roberts, to forge P.M. artworks in order to defraud Max in the Grove customers who believed they were purchasing real P.M. works. In particular, the defendant Leslie Roberts III and Britney Roberts defrauded customers by either selling them forged P.M. paintings or, in the case of one consignment client, returning forged P.M. paintings and falsely claiming that the client's (real) painting failed to sell.

     For example, in April 2010, E.S. arranged for the defendant to sell 17 P.M. paintings on consignment from Max in the Grove. E.S. had received the paintings through the New York studio. Prior to his delivery of the paintings to the defendant, E.S. had 14 of the 17 paintings professionally photographed, and E.S. photographed the remaining 3 paintings himself. Then, on April 26, 2010, E.S. traveled to Florida to deliver the 17 paintings to the defendant and later delivered to the defendant the certificates of authenticity that accompanied each painting. In approximately April of 2011, after repeatedly reporting that E.S.'s paintings had failed to sell, the defendant told E.S. that he had sold two paintings to an individual with the initials "P.T." In July of 2011, at E.S.'s request, the defendant agreed to send 13 of E.S.'s 17 paintings back to him, claiming that two had been sold to P.T. and that another two were to be sold to a New York attorney.

     In mid to late July of 2011, the defendant shipped 14 of the P.M. paintings back to E.S. in Virginia via UPS, a private interstate commercial carrier, E.S. received the paintings on August 4, 2011. When E.S. opened the wooden crate, he suspected the first painting to be a forgery and contacted law enforcement. Upon further review by E.S., the FBI, and the New York studio, it was determined that one painting of the 14 was an original P.M. and that the remaining 13 paintings were forgeries. Two of the forgeries were of the same image but also contained the same serial number, which meant that both could not have been produced by the New York studio. Finally, one of the forgeries was the same image and serial number belonging to a painting the defendant had earlier claimed he had sold to P.T.

     The losses to the victims defrauded by the defendant, Leslie Roberts, III and Britney Roberts, total between $400,000 and $1,000,000.

DE #15, p.1-3. This Proffer makes three points very clear. First, Roberts, Jr. made no admission to a specific number of victims. Second, Roberts, Jr. agreed to a loss amount between $400,000 and $1,000,000 and no greater. Finally, Roberts, Jr. and his accomplices were equally culpable participants who each agreed with each other to commit

the offense with no one person having any control or authority over another.

### III.  The PSI

As noted above, Roberts, Jr. admitted through his Factual Proffer that sometime between April 2010 and September 2012, he and his son and daughter defrauded customers through the sale of forged artwork and, in one particular case, through the return of counterfeit artwork to a client who had provided real pieces to Max in the Grove on consignment.  This scheme involved a loss amount of between $400,000 and $1 million.  Roberts, Jr. did not agree to a number of victims.  Likewise, Roberts, Jr. did not admit to having recruited his son or daughter (who were willing participants) or exercising any authority over them.  The PSI, however, describes Roberts, Jr. as a manager of a scheme that defrauded 21 victims out of $1,430,215.  Probation's analysis of this case ignores Roberts, Jr.'s plea agreement and the limited facts contained in the Factual Proffer.  Thus, Roberts, Jr. makes the following specific objections:

**Paragraph 16:** Roberts, Jr. objects to the "total value" of the paintings being $635,000 (17 pieces at an average of $37,500 each).  Although E.S. asked Roberts, Jr. to sell the pieces for $35,000 to $45,000, it does not mean that the pieces could have sold for that amount of money or that they were worth that amount of money.

**Paragraph 27:** Roberts, Jr. objects to the allegation that there were 21 identifiable victims and that those victims purchased 244 pieces for "up to $795,215."  He also objects to the allegation that E.S. suffered a loss of $635,000 for a total of $1,430,215.  Although Roberts, Jr. admitted in his Factual Proffer that he and his co-defendants sold forged paintings to customers, there was no accounting of the number of customers.  Without

more, an enhancement for an offense involving more than 10 victims is not warranted. Likewise, Roberts, Jr. made no admission to a specific amount of loss suffered by E.S. or anyone that may have purchased a counterfeit piece of art. As such, an estimate of what that loss amount could be (e.g. E.S.'s opinion that his artwork was worth $635,000) is an insufficient basis upon which to increase Roberts, Jr.'s sentence. *United States v. Medina*, 485 F.3d 1291, 1304 (11th Cir. 2007)(Noting that the "amount of loss must be proven by a preponderance of the evidence, and the burden must be satisfied with reliable and specific evidence.")(internal quotes omitted). More importantly, in light of the very clear Plea Agreement and Factual Proffer in this case, assessing a loss amount greater than $1 million would deprive Roberts, Jr. of the benefit of his bargain.

**Paragraph 29:** Roberts, Jr. objects to the description of him as a manager and suggested two-level increase Probation believes is warranted based on that description. This Paragraph reads:

> A two-level managerial increase is recommended for **Roberts, Jr.** Between April 2010 through September 2012, **Roberts, Jr.** knowingly and with intent to defraud, devised a scheme and artifice to obtain money and property by promises to the victims in the case. **Roberts, Jr.** obtained forged and fraudulent copies of P.M. artworks and falsely represented to clients of Max in the Grove that the forged and fraudulent copies of P.M. artworks were authentic by, among other things, showing the clients false and fraudulent serial numbers and certificates of authenticity. The forged P.M. "mixed media" works were created by Roberts Jr.'s son, Leslie Roberts, III, and his daughter, Britany Roberts, both of whom received compensation from **Roberts Jr.** in exchange for forged works of art. The defendant's children became complicit in the scheme after having been recruited by the defendant. No role adjustments are being recommended for Roberts, III or Brittney Roberts.

Other than the PSI's incorrect assertion that Roberts, Jr. recruited his children to participate in the scheme, there is nothing in this Paragraph or the rest of the PSI that supports the

conclusion that Roberts, Jr.'s conduct warrants an upward adjustment for his role in the offense. The burden of proving this fact falls to the proponent of this enhancement. *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997)(Finding the government must not only prove each element of an offense "but also each aggravating factor upon which a harsher sentence is to be based."); *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) (The party seeking to invoke a sentence adjustment pursuant to a guidelines provision has the burden of proving that the provision applies.).

Federal Sentencing Guidelines, §3B1.1( c) provides in full as follows:

Based on the defendant's role in the offense, increase the offense level as follows:

> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1( c). An enhancement under §3B1.1( c), requires the defendant organize or lead at least one other participant. *See* Application Note 2. In addition, an enhancement may not be made solely based upon the defendant's management of assets. *United States v. Glover*, 179 F.3d 1300 (11th Cir. 1999).

> To the extent that our words may have previously indicated that a defendant's management of assets might alone serve as grounds for an increase in base offense level, we now draw the line. We now squarely decide that a section 3B1.1 enhancement cannot be based solely on a finding that a defendant managed the assets of a conspiracy. A finding involving just asset management may support only an upward departure. 179 F.3d at 1302-3.

Thus, in *Glover*, the defendant's control of the cocaine being trafficked could not support a §3B1.1 enhancement. Likewise, in *United States v. Harness*, 180 F.3d 1232 (11th Cir. 1999), the Eleventh Circuit held that the defendant's control over bank accounts he and

his two co-defendants looted (by fraudulently diverted funds for their personal use) and/or the scheme itself did not support a §3B1.1 enhancement.

As set forth in the Factual Proffer, Roberts, Jr. and his children each agreed with the other to forge counterfeit paintings to sell to customers. All profited for their participation (and on occasion the children profited from sales they made that did not involve Roberts, Jr.). Even if it could be said that Roberts, Jr. was solely responsible for devising the scheme (a fact he denies), a role enhancement is not appropriate for a defendant who merely suggests or agrees to commit the offense. Thus, there is simply no evidence that Roberts, Jr. "recruited" his children, directed their activities or otherwise exerted any control or influence over them. Without more, the recommended enhancement under §3B.1.1(c) cannot be sustained.[2]

**Paragraphs 33-43:** These paragraphs set forth the "Offense Level Computation" with a base offense level of 7, an increase of 16 levels for a loss amount between $1 million and $2,500,000, an increase of 2 levels for the number of victims, an increase of 2 levels for role, a decrease of three levels for acceptance of responsibility, and a total offense level of 24. Roberts, Jr. objects to the PSI's assessment of 16 levels for the loss (Paragraph 34), a two-level enhancement for the number of victims (Paragraph 35), an increase of 2 levels for being a manager (Paragraph 37) and a total offense level of 24 (Paragraph 43). Should this Court follow the recommendations in this PSI, Roberts, Jr. will not only not receive the benefit of his plea bargain but he will be exposed to a guideline

---

[2]As with the loss amount, the suggested enhancement should not be imposed based on the Plea Agreement between the parties. The government agreed that, with the exception of a possible number of victims enhancement, the government would not seek any other increase to the guidelines. DE # ¶ 7( c).

range that is four levels greater than that agreed to by the parties. Accordingly, Roberts, Jr. requests this Court sentence him within the terms of his plea agreement and suggests his offense level computation should be as follows:

| | |
|---|---|
| Base Offense Level | 7 |
| Increase for loss amount | 14 |
| Adjustment for Acceptance of Responsibility | <u>-3</u> |
| Total Offense Level | 18 |

With a criminal history category of I Roberts, Jr.'s advisory guideline range for a level 18 is 27 to 33 months. A sentence at the low end of the guideline range was contemplated by the plea agreement.

  WHEREFORE, Roberts, Jr. respectfully requests this Court sustain his objections and order the United States Probation Office to correct the PSI as discussed.

                Respectfully submitted,

                */s/ Michael Mirer*
**MICHAEL MIRER, ESQ.**
100 N. Biscayne Blvd.
Suite 1300
Miami, Florida 33130
Telephone: (305) 536-6177
Facsimile: (305) 536-6179
E-mail: michael@mirerlaw.com
Florida Bar No. 119490

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 13th day of May, 2015.

        */s/ Michael Mirer*
        **MICHAEL MIRER, ESQ.**